IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LBCMT 2007–C3 W. BROAD STREET, LLC,
*et al.*,

    Plaintiffs,

v.                                                        Civil Action No. 3:12–cv–455–JAG

WSG DEVELOPMENT CO.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the plaintiffs' motion for summary judgment. (Dk. No. 19.) The plaintiffs[1] have sued WSG Development Company ("WSG") for breach of contract, conversion, and unjust enrichment; they now seek summary judgment on their conversion claim. For the reasons stated below, the Court GRANTS in part and DENIES in part the plaintiffs' motion. The Court finds WSG liable for conversion, but denies summary judgment as to the amount of damages.

---

[1] The plaintiffs consist of the following: LBCMT 2007–C3 W. Broad St., LLC; LBCMT 2007–C3 Sterling Retail, LLC; LBCMT 2007–C3 Seminole Trail, LLC; LBCMT 2007–C3 Snellville Retail Limited Partnership; LBCMT 2007–C3 Pleasant Retail Limited Partnership; LBCMT 2007–C3 Pecanland, LLC; LBCMT 2007–C3 RHL Blvd. Limited Partnership; LBCMT 2007–C3 Valley Retail LLC; LBCMT 2007–C3 Urbana Pike, LLC; LBCMT 2007–C3 Patrick Street, LLC; LBCMT 2007–C3 Pines Boulevard, LLC; LBCMT 2007–C3 Treasure Coast, LLC; LBCMT 2007–C3 Highway 59 North, LLC; LBCMT 2007–C3 South Mason Road, LLC; and LBCMT 2007–C3 Gunbarrel Road, LLC.

# I. Facts

This case involves financing for the development of retail stores in shopping centers. Although the parties have set up byzantine interlocking corporate structures, the true entities in the transactions consist of a lender, U.S. Bank National Association (U.S. Bank)[2], and two developers, Eric Sheppard and Philip Wolman.

Sheppard and Wolman wanted to develop a number of retail projects, and they set up separate corporations for the various projects. They planned to build retail space and rent it to tenants. Sheppard and Wolman also set up a separate company, WSG Development, Inc. (WSG), to manage the projects. Sheppard and Wolman own not only all the corporations for the various projects but also the management company. Through WSG, Sheppard and Wolman control the rental receipts and property-related disbursements for the retail projects.

U.S. Bank, in turn, established a separate limited liability company or limited partnership for each project. These companies and partnerships ("the Lenders") controlled separate loans to each of the corporations ("the Borrowers") created by Sheppard and Wolman for each retail project. U.S. Bank is the sole member of each limited liability company and sole limited partner of each partnership. The Lenders are the plaintiffs in this case.

A number of documents delineate the rights and obligations of the parties including promissory notes, deeds of trust, security agreements, management agreements, and other loan documents (collectively, the "loan documents").

As collateral, the Borrowers assigned the right to receive rents from their properties to the Lenders. The assignment of rents, however, was subject to a conditional license. The

---

[2] In some, if not all, of the loans, U.S. Bank purchased the indebtedness and stands in the shoes of the original creditor. Since the sale of the debt makes no difference in this case, the Court will refer to U.S. Bank and any subsidiary corporations as the lenders.

conditional license allowed the Borrowers to collect the rents until the occurrence of a loan default. (*See, e.g.*, Dk. No. 21, Ex. 2, at § 1.2.) According to the loan documents, default occurs when a Borrower fails to pay a portion of the debt on the date it is due. (*Id.* at § 9.1.)

In the event of a default, the Borrowers' license to receive rents terminates automatically and immediately. The right to collect rents reverts to the plaintiffs. Once in default, the agreements between the parties no longer permit the Borrowers to keep the rent payments they receive; rather the agreements require the Borrowers to transmit the rents to the plaintiffs. (*Id.* at § 1.2; Dk. No. 25, Ex. 17, at § 3.1; Dk. No. 26, Ex. 32.)

Because the plaintiffs and the Borrowers have cross-guaranteed and cross-collateralized the loans, when a single Borrower defaults, the Lenders immediately gain the right to collect rents from *all* of the Borrowers' properties.[3]

In late 2010, some of the Borrowers defaulted on their loans by missing payments. By March 2011, all of the Borrowers ceased making monthly debt service payments under the loan documents. Despite the requirements of the loan documents and demand letters from the Lenders, the Borrowers did not forward their rent payments to the Lenders.

Instead, enabled by the shared management and ownership structure, WSG took and kept the Borrowers' collected rents rather than transmitting those payments to the plaintiffs.

The Lenders now seek summary judgment on their conversion claim for the rents transferred from the borrowers to WSG since March 2011.

## II. Standard of Review

Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of

---

[3] The parties agree that all of the loan documents are substantially identical.

law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period for discovery, Rule 56(a) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks & emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. Discussion

#### *A. Conversion Under Florida Law*

Under Florida law,[4] conversion consists of "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib*

---

[4] In diversity cases, district courts must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor*, 313 U.S. 487, 496–97 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 74–77 (1938)). Virginia's choice-of-law rules dictate that this Court must apply the law of the place of

4

*Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman)*, 450 So.2d 1157, 1160–61 (Fla. Dist. Ct. App. 1984)). The wrong inherent in conversion does not consist of the acquisition of property by the converter, but rather the deprivation to the rightful owner of the property and the corresponding rights of ownership. *Star Fruit Co. v. Eagle Lake Growers*, 33 So.2d 858, 860 (Fla. 1948).

A claim for conversion requires the following elements: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with an ownership interest therein." *Amergy Bank Nat. Ass'n v. Deutsche Bank Corp.*, 2013 WL 132581, at *5 (M.D. Fla. Jan. 10, 2013) (citing *Tambourine Comerico Int'l SA v. Solowsky*, 312 Fed. App'x 263, 271–72 (11th Cir. 2009)). Additionally,

> [c]onversion may exist where "a person wrongfully refuses to relinquish property to which another has the right of possession" and it "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right of possession, since malice is not an essential element of the action."

*Sup. Const. Corp. v. Bank of Am. Corp.*, 2011 WL 6070044, at *2 (S.D. Fla. 2011) (quoting *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. Dist. Ct. App. 1994)).

Sums of money may serve as permissible subjects of conversion claims so long as "an obligation [exists] to keep intact or deliver the specific money in question, so that [the] money can be identified." *Gasparini v. Pordomingo*, 972 So.2d 1053, 1056 (Fla. Dist. Ct. App. 2008) (citing *Futch v. Head*, 511 So.2d 314, 320 (Fla. Dist. Ct. App. 1987)). A court can identify money where "it is delivered 'at one time, by one act and in one mass, or where the deposit is special and identical money is to be kept for the party making the deposit.'" *Special Purpose*

---

the wrong. *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 664 (Va. 1979); *Buchanan v. Doe*, 246 Va. 67, 70–71, 431 S.E.2d 289, 291 (Va. 1993); *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5, 431 S.E.2d 33, 34 (Va. 1993). Here, the parties do not dispute that the alleged wrong occurred in Florida. Accordingly, the Court will apply Florida tort law to the plaintiffs' conversion claim.

*Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1100 (11th Cir. 2000) (citing *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1542 (S.D. Fla. 1989)). This standard does not, however, require that "each coin or bill [] be earmarked." *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. at 1542.

### *B. WSG Converted Rent Payments Due to the Lenders*

When WSG pocketed the rent payments for the various projects, it committed the tort of conversion against the Lenders. Contrary to the defendant's assertions, disputes of material fact do not exist as to WSG's liability for conversion.

Under the loan documents, the Borrowers assigned the right to collect rents from their properties to the Lenders, subject to a license allowing the Borrowers to collect rents until the occurrence of a default. (*See, e.g.*, Dk. No. 21, Ex. 2, at § 1.2; Dk. No. 25, Ex. 17; Dk. No. 26, Ex. 32, at Ex. A, §§ 3.8, 5.1.) A default occurred in late 2010, when some of the borrowers missed loan payments to the Lenders, triggering the plaintiffs' right to immediately possess the rents, and the Borrowers' responsibility to send the proceeds to the Lenders. (Dk. No. 21, Ex. 2, at § 9.1; Dk. No. 27, Ex. 47, at 59:6–16.)

Despite the requirements of the loan documents and the demand letters from the plaintiffs, the Borrowers did not remit rent payments to the plaintiffs. (Dk. No. 30–1, Ex. B; Dk. No. 27, Ex. 47, at 33:16–34:4, 36:6–19.) Instead, the Borrowers transmitted all "surplus cash" from the properties—the rent payments minus operating expenses—to WSG, at WSG's direction. (Dk. No. 27, Ex. 47, at 56:2–57:16.) The obligations created by the loan documents and WSG's corresponding behavior easily satisfy the elements of a conversion claim.

The rental payments meet the requirements for a conversion claim for money. The Borrowers owe the plaintiffs the rental income from the properties minus operating expenses.

(*See, e.g.*, Dk. No. 27, Ex. 47, at 56:2–57:9.) This serves as a special, identifiable amount that the loan documents required the Borrowers to keep intact and deliver to plaintiffs, which sufficiently supports a claim of conversion of money under *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d at 1100.

In short, WSG wrongfully asserted dominion over money due to the plaintiffs, which was inconsistent with the plaintiffs' interest.

### C. WSG's Defenses

WSG raises a number of defenses to the Lenders' claims. None of them hold water, but the Court will address them seriatim.

First, the defendant contends that the plaintiffs authorized the transfer of "surplus cash" to WSG, thus negating the wrongfulness of WSG's dominion over the rent payments. WSG proffers three reasons to support its authorization argument, and all three fail. First, WSG characterizes the transfers as "developer fees" due from previous obligations. The payments to WSG cannot serve as valid developer fees incurred before default, because the loan documents do not permit the Borrowers to pay developer fees to WSG. (Dk. No. 27, Ex. 47, at 64:15–69:22.) Indeed, Sheppard admitted that he had no authority to make developer fee payments to WSG under the loan documents, and received no authorization to do so from the plaintiffs. (Dk. No. 27, Ex. 47, at 65:14–66:10; 69:18–22.)

Second, WSG says the transfers serve as property-related expenses authorized by the loan documents. This argument fails for a number of reasons. For one thing, the loan documents expressly exclude the payment of management fees in the event of default. For the entire period of default, WSG may not receive any "Management Fees or other fee, commission or amount payable under the Management Agreement[.]" (Dk. No. 26, Ex. 32, at § 8.) Further, while the

loan documents do allow the Borrowers to pay property-related expenses before remitting the remaining rent money to the plaintiffs, the payments to WSG do not qualify under the contractual definition of "property-related expenses;" the loan documents describe property-related expenses as operating expenses, real estate taxes, insurance premiums, and repairs and maintenance. (Dk. No. 26, Ex. 32, at § 6.) Payment to WSG does not fall into any of these categories.

Third, WSG also argues that it had permission to keep the money because of a modification of the loan documents. Simply put, no modification of the loan documents occurred. The loan documents contain abundantly clear language that the parties must make any modification through a signed writing, and explicitly prohibit oral modifications of the agreements. (Dk. No. 21, Ex. 2, at § 19.1; Dk. No. 25, Ex. 17, at § 5.2; Dk. No. 26, Ex. 34, at §§ 13, 8.4.) While the parties had ongoing conversations and email discussions, WSG has produced no evidence of a written, signed modification. (Dk. No. 27, Ex. 47, at 36:20–42:7.)

The defendant also contends that the affirmative defense of equitable estoppel bars the claims in this case.[5] To prove equitable estoppel, WSG must demonstrate justifiable reliance on a prior inconsistent statement or conduct. *Regions Banks v. Old Jupiter, LLC*, No. 10-80188, 2010 WL 5148467, at * 5 (S.D. Fl. Dec. 13, 2010). The defendant says it relied on the statement of an unidentified employee of KeyBank (the loan servicer) in 2010 as releasing the Borrowers from their responsibility of remitting the rents to the plaintiffs from March 2011 onward. Supposedly, KeyBank told WSG that in order to discuss refinancing, it needed to default. Even assuming that this conversation did in fact take place, WSG provides no facts that KeyBank

---

[5] Although the defendant raises a number of other affirmative defenses in its answer, it only raises equitable estoppel in its opposition to the motion for summary judgment. The Court, therefore, only addresses the issue of equitable estoppel. The Court will not manufacture arguments supporting or opposing the other affirmative defenses.

stated that the plaintiffs would not consider the default (which KeyBank supposedly recommended) as an actual default under the terms of the loan documents. Furthermore, WSG provides no facts that the alleged "induced default," as WSG might refer to it, would not trigger the obligations of the parties under the loan documents when default occurs. Thus, even if the KeyBank employee made a statement to WSG about defaulting, this statement could in no way release the Borrowers from the requirement to remit the rents upon default. The defendant's affirmative defense of equitable estoppel, therefore, fails.[6]

In a final effort to prevent summary judgment, WSG relies on the economic loss rule. A judicially created doctrine, Florida's economic loss rule prohibits recovery in tort for injuries based solely on economic losses; *i.e.*, injuries arising from a contract between parties with privity or injuries arising from a product's defect that only affect the product itself and do not cause personal injury or property damage. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004) *overruled by Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 2013 WL 828003 (Fla. Mar. 7, 2013).

After a long period of expansion, Florida courts have receded from the prohibition on tort actions for injuries arising from contracts. *See, e.g.*, *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999) (refusing to apply the economic loss rule in actions for negligence in the delivery of professional services). This year the Florida Supreme Court took the "final step and [held] that the economic loss rule applies only in the product liability context." *Tiara Condo. Ass'n v. Marsh & McLennan Cos., Inc.*, 2013 WL 828003, at * 7; *see also Tiara Condo. Ass'n v. Marsh & McLennan Cos., Inc.*, 2013 WL 1606345, at *1 (11th Cir. Apr. 16, 2013) (finding that the

---

[6] The Court need not reach the issue of collateral estoppel raised by the parties in regard to In re WSG Dulles, L.P., 12-11149-BFK, 2013 WL 64759 (Bankr. E.D. Va. 2013), because it finds an independent basis on which to grant summary judgment.

economic loss rule did not bar the plaintiff's claims in light of *Tiara Condominium Association*); *In re Mouttet*, 2013 WL 1547528, at *13, n.44 (Bankr. S.D. Fla. Apr. 12, 2013) (citing *Tiara Condominium Association*); *F.D.I.C ex rel. Colonial Bank v. Pearl*, 2013 WL 1405941, at *5 (M.D. Fla. Apr. 8, 2013) (applying the *Tiara Condominium Association* decision); *Wiand v. Wells Fargo Bank*, 2013 WL 1401414, *6 (M.D. Fla. Apr. 5, 2013) (citing *Tiara Condominium Association* for the proposition that the economic loss rule does not bar a negligence claim arising out of a bank's participation in derivative transactions with hedge funds involved in a Ponzi scheme); *Razi v. Razavi*, 2013 WL 1193005, at *2 (M.D. Fla Mar. 22, 2013) (applying the *Tiara Condominium Association* decision).

Because the Florida Supreme Court has held that the economic loss doctrine only applies in the product liability context, the rule does not bar the plaintiffs' conversion claim against WSG.

### *D. The Issue of Damages*

The parties agree that the Borrowers transferred the net aggregate amount of $2,509,437 to WSG during the period of December 1, 2010, to December 31, 2012. The plaintiffs, however, have not sustained their burden in establishing that no dispute of material fact exists as to the exact amount WSG converted.

The plaintiffs attempted to calculate their damages not based on documents that identified the sum of money transferred from the lenders to WSG, but by subtracting the amounts paid by the borrowers to third parties from the gross income of each borrower. (*See* Dk. No. 33, at 14.) Additionally, the plaintiffs' have incorporated an extended timeline into their damages calculation. (*See id.* at 14–15.)

This Court finds that a genuine dispute about a material issue of fact exists as to the amount of damages. Accordingly, the Court must deny the plaintiffs motion for summary judgment with respect to damages. *See, e.g., Doral Bank PR v. Fed. Home Loan Mortg. Corp.*, 2010 WL 3984667, *9–11 (E.D. Va. 2010) (finding the method of damages calculation insufficient to support a motion for summary judgment).

## IV. Conclusion

For the reasons described above, the Court shall GRANT in part and DENY in part the plaintiffs' motion for summary judgment. The Court grants the motion as to the plaintiffs' conversion claim, but denies the motion with respect to damages.

It appears to the Court that the now successful conversion claim allows the Lenders to recover everything they are entitled to under their other theories. For this reason, the Court will continue generally the trial on breach of contract and unjust enrichment. The trial of this case will involve only the issue of damages for conversion. At the end of the damages trial, the Court will consider motions to dismiss the other claims with or without prejudice.

The Court shall enter an appropriate order.

Date: May 6, 2013
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge